# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| PATRICK COLLINS, INC., ) | |
| Plaintiff, ) | |
| v. ) | No. 12-CV-3161 |
| JOHN DOES 1-9, ) | |
| Defendant. ) | |

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendant John Doe No. 4's (Doe/4)[1] Omnibus Motion to Sever Defendants for Improper Joinder and to Vacate the Order Granting Leave to Serve Third-Party Subpoenas and to Quash the Subpoena (d/e 4) (Motion). For the reasons set forth below, the Motion is DENIED.

## BACKGROUND

On June 14, 2012, Plaintiff Patrick Collins, Inc., filed a two-count complaint against unknown plaintiffs John Does 1-9. <u>Complaint-Action for Damages for Property Rights Infringement (d/e 1) (Complaint)</u>. The Complaint alleges that the Plaintiff Patrick Collins, Inc. (Collins), owns the registered copyright to a motion picture entitled "Busty Construction Girls"

---

[1] Court's mailing of case related information to John Doe No. 4 at the address provided was returned "undeliverable".

(the "Work").  The Complaint alleges that the Defendants infringed on that copyright by copying, reproducing, and redistributing portions of the Work through a peer-to-peer file sharing protocol known as BitTorrent. Complaint ¶¶46-49.

Under the BitTorrent protocol, the person who starts the distribution process is known as the "seeder."  The seeder uses the BitTorrent software to divide a digital file, such as a digital copy of the Work, into equal portions known as "pieces" and assigns a unique alphanumeric sequence called a hash value (Unique Hash Number) to each piece of the digital file.  The Unique Hash Numbers are then recorded on another computer file called a torrent file.  Other users of the BitTorrent protocol download the torrent file and a piece of the digital file through torrent websites.  A tracker computer keeps track of the users that have downloaded portions of a file listed on a particular torrent file.  Through the BitTorrent protocol and the tracker computer, the user then makes that downloaded piece available to other users who have part of the file.  The users simultaneously upload and download pieces of the digital file to and from each other and the seeder.  The seeder and the other users are collectively called a "swarm."  At the point that a user has copied enough pieces of the file, the BitTorrent software reassembles the file.  In this case, the user can then view the

entire Work.  The user also becomes an additional seeder that distributes the torrent file and the digital file.  <u>Complaint</u> ¶¶ 19-35.

Collins alleges that the Defendants were customers of Internet Service Providers (ISPs) through which the Defendants participated in the peer-to-peer file sharing.  ISPs assign Internet protocol (IP) addresses to customers who are connected to the ISP, and thereby, to the Internet. Collins alleges that it retained an investigator to locate the IP addresses used to infringe on the Work through the BitTorrent protocol. Collins alleges that its investigators have identified nine IP Addresses in this District through which the Defendants infringed on the Work through the BitTorrent protocol (the Alleged IP Addresses).  Collins alleges that each Defendant illegally downloaded and uploaded portions of the same copy of the Work because the investigator determined that each Alleged IP Address was used to copy and redistribute a portion of the Work that had the same Unique Hash Number.  Collins alleges each of the Alleged IP Addresses was traced to an address in a city located within the District.  Collins alleges the city that is associated with each Alleged IP Address, and the date and time on which the download or upload of the Work occurred. Collins alleges that its investigator has identified the Alleged IP Addresses and traced the locations, but does not have the name of any Defendant

customer associated with any of the Alleged IP Addresses. Complaint ¶¶ 4, 21-22, 36-42, and Exhibit A.

Based on these allegations, Collins alleges two claims against the Defendants, Infringement (Count I), and Contributory Infringement (Count II). Collins alleges in each Count that the Defendants acted willfully. Complaint ¶¶ 50, 60. Collins seeks the greater of $150,000.00 in statutory damages or actual damages, plus attorney fees in each Count. Complaint, at 9 and 11. The Copyright Act authorizes statutory damages of $750.00 to $30,000.00 for infringement, but increases the possible statutory damages to a maximum of $150,000.00 if the infringement was willful. 17 U.S.C. § 504(a) and (c).

On June 23, 2012, Collins filed a Motion for Leave to Serve Third Party Subpoenas Prior to Rule 26(f) Conference (d/e 2) (Motion for Leave). Collins sought to serve subpoenas on the ISPs to determine the identity of the customers associated with the Alleged IP Addresses listed in the Complaint in order to ascertain the identity of Defendant Does 1-9. Collins wanted to ascertain the identity of the Defendants to effect service. Collins attached to the Motion the declaration of the investigator who located the nine Alleged ISP Addresses. Motion for Leave, attached Declaration of Tobias Fieser in Support of Plaintiff's Motion for Leave to Take Discovery Prior to a rule 26(f) Conference. The Court allowed the Motion on June 25,

2012.  <u>Order on Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference (d/e 3) (Order)</u>.  Doe/4 filed the instant Motion on August 16, 2012.

## ANALYSIS

Doe/4 asks the Court to sever the Defendants, vacate the Order, and quash the subpoenas.  The Court will address the severance issue first and then the discovery issue.

1. <u>Motion to Sever</u>

The Defendants are properly joined if: (1) Collins asserts a right to relief against them jointly, severally, or in the alternative, with respect to or arising out of the same transaction, occurrence, or series of transactions; and (2) a question of law or fact common to all will arise in the action.  Fed. R. Civ. P. 20(a)(2).  Permissive joinder under Rule 20 are to be liberally construed to promote convenience and judicial economy.  See <u>First Time Videos, LLC v. Does 1-500</u>, 276 F.R.D. 241, 251-52 (N.D. Ill. 2011); <u>Donkeyball Movie, LLC v. Does 1-171</u>, 810 F.Supp.2d 20, 27 (D.D.C. 2011).  The Supreme Court long ago advised that, "joinder of claims, parties and remedies is strongly encouraged." <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 724 (1966).

In this case Collins alleges that all of the Defendants infringed on Collins' copyright by uploading and downloading the same unique copy of

the Work with the same Unique Hash Number through the same BitTorrent protocol that required each participant to send and receive portions of the Work in order to download and view the entire Work.  These allegations are sufficient at this point to show that Collins asserted a claim against each Defendant that arose from the same series of transactions.  See e.g., First Time Videos, LLC, 276 F.R.D. at 252-53; Donkeyball Movie, LLC, 810 F.Supp.2d at 27-28.

    Doe/4 argues that the Defendant's activities are too attenuated from each other to constitute a single series of transactions.  Doe/4 essentially argues that thousands of people use the BitTorrent protocol through various websites to upload and download digital media such as the Work from many different sources; thus, the fact that the Alleged IP Addresses were used to upload and download the Work does not show that they had any connection to each other.  Several courts have agreed with this argument in similar situations.  See e.g., Liberty Media Holdings, LLC v. BitTorrent Swarm, 277 F.R.D. 672, 675 (S.D. Fla. 2011); Hard Drive Products, Inc. v. Does 1-188, 809 F.Supp.2d 1150, 1163-64 (N.D. Ca. 2011).

    The Court has carefully considered the matter and is not persuaded by the authority cited by Doe/4.  The Complaint alleges that the Defendants used the nine Alleged IP Addresses to upload and download a copy of the

Work that had the same Unique Hash Number.  Based on the allegations, this means that the copy that each Defendant downloaded ultimately came from a single source.  Given the policy in favor of joinder, this is sufficient at this time to deny severance.  This decision is without prejudice to Doe/4 or any other Defendant to move to sever in the future if circumstances show that severance would then be appropriate.

Doe/4 also asks the Court to exercise its discretion to sever the cases because joinder does not promote judicial economy.  Doe/4 again cites a number of courts that have done so.  Hard Drive Productions, Inc., 809 F.Supp.2d at 1164.  Most of those cases involved hundreds of defendant Does only known by IP addresses.  E.g., Id. (188 defendants).  In those cases, joinder might have been too cumbersome.  The Court sees no such problem in this case.  Collins has named nine defendants, not hundreds.  The nine Alleged IP Addresses all are located in this District.  Joinder at the discovery phase would be more efficient than conducting the same discovery in nine separate cases.  See  Patrick Collins, Inc. v. Does 1-2,590, 2011 WL 4407172, *7 (N.D. Cal. September 22, 2011); Donkeyball Movie, LLC, 810 F.Supp.2d at 27 (joinder at the discovery phase "'ensures administrative efficiency . . . and allows the defendants to see the defenses, if any, that other John Does have raised.'") (quoting London-Sire Records, Inc. v. Doe 1, 542 F.Supp.2d 153, 161 (D. Mass.

2008)).  Again, any Defendant can renew the Motion later if he or she later shows that joinder of him or her would not promote judicial economy.  At this point, however, severance is denied.

2.   Motion to Vacate and Motion to Quash

In the alternative, Doe/4 asks the Court to vacate the Order and quash the subpoenas directed to the ISPs to disclose the identity of the customers associated with the Alleged IP Addresses.  The Court sees no basis for this request.  The case cannot proceed unless Collins identifies the Defendants.  Collins alleges that each of the Alleged IP Addresses was used at a specific date and time to infringe on a portion of the Work. Complaint, Exhibit A.  Each Alleged IP Address is associated with a specific customer of an ISP at a particular point in time.  Collins cannot secure the identity of the nine specific customers from the ISP without a subpoena or court order.  Collins cannot commence discovery before the Rule 26(f) conference without the Order, and a Rule 26(f) conference cannot occur until the identity of the Defendants is known and the Defendants are served.  Fed. R. Civ. P. 26(d) & (f).  Collins, thus, must secure the Order and conduct this discovery before the Rule 26(f) conference in order for the case to proceed.

Doe/4 argues that the ISP customers who held the Alleged IP Addresses did not necessarily engage in any infringement.  Doe/4 argues

that someone could use a process known as spoofing to appear falsely to use one of the Alleged IP Addresses. Doe/4 also argues that one or more of the customers who held one of the Alleged IP Addresses may use a wireless modem or other wireless technology to connect devices to the Internet, and a neighbor or other unknown third party could have made an unauthorized surreptitious connection to that wireless technology to infringe on the Work. See VPR Internationale v. Does 1-1017, 2011 WL 8179128, *1 (C.D. Ill. 2011).

Doe/4's arguments may or may not be persuasive at trial or summary judgment, but this is a discovery issue. Collins seeks to use the subpoenas to secure information from the ISPs. Collins may do so if the information sought is not privileged and is relevant to the claims. Fed. R. Civ. P. 26(b)(1).[2] Relevance is a broad concept at the discovery phase, "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. The identity of the customers associated with the Alleged IP Addresses is relevant under this standard. The customers may know who used the Alleged IP Address at issue or whether some spoofing occurred. The identity of the customer is also likely to lead to any neighbor or other person who may have illegally connected to the customer's wireless

---

[2]Doe/4 claims no privilege that makes the identities inappropriate for discovery.

technology.  See VPR Internationale, 2011 WL 8179128, at *1.  The subpoenas to the ISP, therefore, are a proper use of discovery.

Doe/4 relies heavily on VPR Internationale to support his or her argument.  The VPR Internationale case, however, was significantly different from this case.  The plaintiff in that case, VPR Internationale, sought to commence a class action against all persons everywhere who used the BitTorrent protocol to infringe on any of VPR Internationale' copyrighted motion pictures.  VPR Internationale alleged that it identified 1,017 IP addresses that had used the BitTorrent protocol to infringe on its copyrights.  VPR Internationale did not allege that any of the 1,017 IP addresses had been used to upload or download the same unique copy of any of VPR Internationale's copyrighted works.  VPR Internationale did not allege that it had identified even one IP address that was used within the District to infringe on one of its copyrights, let alone one who would be an appropriate class representative.  See VPR Internationale, Case No. 11-2068, Class Action Complaint (docket entry no. 1), ¶ 4 and Exhibit A.  Under these circumstances, this Court found that the request for authority to issue subpoenas before the Rule 26(f) conference was little more than a fishing expedition and an abuse of the discovery process.  VPR Internationale, 2011 WL 8179128, at *1-2.

In this case, Collins is not engaged in a fishing expedition. Collins has identified nine Alleged IP Addresses, not 1,017. These Alleged IP Addresses were all used to download and upload the same unique copy of the Work. The Alleged IP Addresses were all traced to addresses within the District. The subpoenas only seek information on these nine Alleged IP Addresses that allegedly were used illegally within the District. Collins' limited subpoenas are proper. The rationale of the <u>VPR Internationale</u> case does not apply herein.

Lastly, Doe/4 asks the Court to quash the subpoena because he or she and the other unknown Defendants will suffer unwanted annoyance, embarrassment, oppression, or an undue burden if the ISPs comply with the subpoenas. Fed. R. Civ. P. 45(c)(3(A)(iv). Doe/4 characterizes the Work as pornography and argues that being accused of downloading pornography would be embarrassing, and so, would impose an undue burden. Doe/4 argues that Collins is abusing the judicial process by participating in a for-profit copyright infringement lawsuit cottage industry. Doe/4 argues that pornographers are filing these types of lawsuits all over the country with no intention of litigating their claims of infringement. The pornographers file the suits, subpoena the names of customers with IP addresses, and extract settlements out of the customers with threats of embarrassing them by naming them on the public record. Several courts

apparently have been persuaded by with this argument.  See Motion, at 2-3 and cases cited therein.

One person's cottage industry in harassing lawsuits is another person's vigilant defense of property rights.  The Work may or may not be pornographic, but Collins has alleged that it owns the copyright to the Work and, if so, is entitled to the same protections as the owners of any other copyrighted work.  Doe/4 concedes that thousands and thousands of people use peer-to-peer systems like BitTorrent to infringe copyrighted material like the Work.  Indeed, Doe/4's joinder argument depends on the contention that many thousands of people are anonymously and illegally copying the Work over the Internet.  The proliferation of these types of lawsuits would be expected given the alleged infringement by thousands of people.  The volume of lawsuits alone does not indicate any impropriety.

The fact that Collins, and others, may settle these suits quickly also does not indicate any wrongdoing.  Settlement of civil disputes is generally a positive outcome, not a negative one.  Doe/4 also claims the settlement amounts are small; the small amounts, however, may again reflect the value of the claim and the cost of litigation, nothing more.

Doe/4 further makes no showing that Collins is fabricating a false claim.  Doe/4 does not allege that Collins pulled the Alleged IP Addresses out of thin air without a good faith basis to believe those addresses were

used to download the Work.  Doe/4 does <u>not</u> challenge any of the procedures used by Collins' investigator to identify infringing IP addresses, including the Alleged IP Addresses.  Doe/4 does <u>not</u> dispute that the Alleged IP Addresses were used to download and upload portions of the same unique copy of the Work.  Doe/4, thus, does <u>not</u> dispute that Collins traced the Alleged IP Addresses to this District.  Doe/4 presents <u>no</u> basis for the claim that Collins is improperly attempting to extract settlements from innocent people.

The Court acknowledges that a risk of embarrassment exists for the ISP customers who may become publically associated with the Alleged IP Addresses.  The Work apparently contains adult content, and potentially pornographic content.  The potential for embarrassment does not outweigh the statutory right of Collins to protect its property interest in its copyright, at least based on the record now before the Court.  Any potential Defendant may seek appropriate relief should Collins wrongfully name him or her as a Defendant after completing its initial discovery.  <u>See</u> <u>e.g.</u>, Fed. R. Civ. P. 11; 28 U.S.C. § 1927.  At this point, however, the Court sees no basis to preclude Collins from completing the proposed discovery.

WHEREFORE, Defendant John Doe No. 4's (Doe/4) Omnibus Motion to Sever Defendants for Improper Joinder and to Vacate the Order

Granting Leave to Serve Third-Party Subpoenas and to Quash the Subpoena (d/e 4) is DENIED.

ENTER: September 18, 2012

 *s/ Byron G. Cudmore* 
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE